FILED

97 NOV 25 AM 10:01

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

NOV 25 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FRED M. JOHNSON,  }
                 }
    Plaintiff,   }
                 }   CIVIL ACTION NO.
    vs.          }
                 }   CV-96-AR-2428-E
CONSOLIDATED PUBLISHING CO., }
INC. d/b/a/ THE ANNISTON     }
STAR,            }
                 }
    Defendant.

**MEMORANDUM OPINION**

The court has before it the motion of defendant, Consolidated Publishing Co., Inc. d/b/a/ *The Anniston Star* ("Consolidated"), for summary judgment in the above-styled cause. Plaintiff, Fred M. Johnson ("Johnson"), alleges that Consolidated violated the Age Discrimination In Employment Act of 1967, *as amended*, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), by discharging him because of his age. Alternatively, Johnson alleges that he was constructively discharged from his employment with Consolidated. For the following reasons, the court determines that no genuine issue of material fact exists with respect to said claims. Therefore, it concludes that Consolidated is entitled to judgment as a matter of law.

24

## I. *Pertinent Undisputed Facts*

Johnson began working for Consolidated more than 29 years ago. Consolidated publishes a local newspaper in Anniston, Alabama, known as *The Anniston Star*. Over the years, Johnson worked his way up through the company's ranks. Eventually, Johnson rose to assume the position of mail room foreman. As mail room foreman, Johnson supervised, *inter alia*, the assembly and distribution of the newspapers.

In February, 1994, Consolidated's marketing director, Pat Taylor ("Taylor"), implemented a company-wide reorganization and modernization effort. The goal of this effort was to make Consolidated more productive and cost-effective. Apparently, Johnson had trouble adjusting to Taylor's initiative. Between September, 1994, and August, 1995, management officials at Consolidated advised Johnson on at least four occasions that he needed to correct problems in the mail room and to increase that operation's efficiency. (Def. Exh. 5, 6, 7, and 8 to Johnson Depo.). In fact, on May 16, 1995, Taylor notified Johnson that his performance had become "unacceptable" and placed him on probation for six months. (Def. Exh. 7 to Johnson Depo.). Taylor told Johnson that if his performance did not improve within the six months, he would be terminated. (Id.).

On August 28, 1995, Taylor reprimanded Johnson again for the

2

poor performance of the mail room. The day before, mail room production had been far below capacity. Taylor described the incident as "a disaster," and he warned Johnson that the company would not tolerate a similar incident. (Def. Exh. 8 to Johnson Depo.).

On August 29, 1995, John Rose ("Rose") began working as Consolidated's circulation director. At some point during Rose's first day on the job, Johnson informed Rose that, starting the next day, he would take two weeks of his accumulated vacation time. Apparently, this announcement came as a direct response to Taylor's reprimand from the day before. Given that it was his first day on the job, Rose took Johnson's announcement as a request and refused it. After a tense exchange with Rose, Johnson decided to disregard Rose's decision. He stormed off the company premises, and he did not return to work or contact the company for nine days. According to Johnson, he took this action in order to show the company how difficult it was to run the mail room without him. (Johnson Depo. at 87). Johnson acknowledges that taking his vacation time without the approval of his supervisor was a violation of company policy. (Johnson Depo. at 87-88). Following Johnson's abrupt departure, Consolidated immediately installed James Finley as mail room foreman.

On September 8, 1995, Johnson received a letter from Pat

3

Taylor. (Def. Exh. 3 to Johnson Depo.). The letter informed Johnson that the company assumed from his actions that he had "voluntarily quit." At the time Johnson received this letter, he was sixty years old. (Def. Exh. 2 to Johnson Depo.).

Johnson filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on March 5, 1996. (Id.). He amended this charge on March 7, 1996. That agency made no determination and issued Johnson a right-to-sue letter. This lawsuit followed.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Eleventh Circuit also has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Consolidated has invoked Rule 56.

### III. *Discussion*

As an initial matter, the court feels compelled to discuss Johnson's failure to respond to Consolidated's motion for summary judgment. Consolidated filed its motion for summary judgment on September 30, 1997. Pursuant to this court's order of October 6, 1997, Johnson had until October 28, 1997, to submit any briefs or other materials in opposition to Consolidated's said motion. Johnson failed to file any opposition materials by that date. However, on November 10, 1997, Johnson filed a motion seeking leave to file his opposition materials out of time. The court granted Johnson's motion and gave him until November 17, 1997, to file his opposition materials. On November 17, 1997, Johnson filed a motion to extend the deadline for filing his opposition materials to November 22, 1997. The court denied Johnson's motion on November 18, 1997. Despite Johnson's failure to submit his opposition materials in a timely manner, the court is well aware of its obligation under Fed.R.Civ.P. 56 to consider the evidence that has been submitted in the light most favorable to Johnson, and it will do so.

### A. Johnson's ADEA Claims[1]

As noted above, Johnson brings two claims pursuant to the ADEA. First, he alleges that Consolidated actually discharged him because of his age. Second, he alleges that his discharge was constructive. The court will address each of these allegation in turn.

#### 1. *Discriminatory Discharge*

The United States Supreme Court first articulated the *prima facie* case for disparate treatment in employment settings in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). The Court later refined this standard in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). Federal courts use this standard where, as here, a plaintiff's claim of disparate treatment relies on circumstantial evidence. Over the years, the McDonnell Douglas-Burdine model has been adapted to analyze varying types of employment discrimination claims, including those arising under the ADEA.

---

[1] Consolidated contends that Johnson's ADEA claims are time-barred because he failed to file his EEOC charge within 180 days of learning that he had been terminated. Johnson learned of his termination on September 8, 1995, in a letter from Taylor. (Def. Exh. 3 to Johnson Depo.; Johnson Depo. at 35). Johnson's amended EEOC charge indicates that he filed his original charge on March 5, 1996. (Def. Exh. 2 to Johnson Depo.). Although Johnson's original charge does not appear in the record, Consolidated points to nothing that convinces the court that it should not rely on the information presented in his amended charge. Therefore, the court concludes that Johnson filed his original EEOC charge on March 5, 1996 — 179 days after learning of his discharge — and that Consolidated's contention on this point is without merit.

6

For example, in order to make out a *prima facie* case for an ADEA violation, an employee must demonstrate: (1) that he is over the age of forty; (2) that he was qualified for his position; (3) that he experienced an adverse employment action — e.g., a discharge; and (4) that he was replaced by a person who is substantially younger than himself. Jameson v. Arrow Co., 75 F.3d, 1528, 1531, (11th Cir. 1996). If Johnson establishes a *prima facie* case for age discrimination, then the burden of production shifts to Consolidated to establish evidence of a legitimate, nondiscriminatory reason that explains why it took the employment action that it did. *See* Wisdom v. M.A. Hanna Co., et al., 1997 WL 610483 *5 (N.D.Ga. 1997) (explaining employer's burden). Finally, if Consolidated meets this exceedingly light burden, then the burden shifts to Johnson to show that the reason given by Consolidated is, in fact, a pretext for age discrimination. *See* id. (explaining employee's burden once employer rebuts *prima facie* case).

Consolidated argues that Johnson cannot make out his *prima facie* case. More specifically, the company contends that, because Johnson voluntarily resigned, he cannot show that he suffered an adverse employment action. Consolidated also contends that Johnson cannot show that a younger employee replaced him. The court finds both of these contentions to be

7

unpersuasive for two reasons.

First, nothing in the record convinces the court that Johnson ever *intended* to resign his position. Obviously, such intent would be necessary if, as Consolidated contends, Johnson *voluntarily* resigned. Rather, the evidence demonstrates that Johnson requested to take paid time off and that, when his request was refused, he disregarded his supervisor and went absent without leave. (Johnson Depo. at 32, 86). As a result of his decision to do so, the company replaced Johnson with Finley. (Def. Brf. at 6). Thus, contrary to Consolidated's contention, Johnson can show that he experienced an adverse employment action, albeit one prompted by his own bullheadedness.

Second, the record reveals that Consolidated replaced Johnson with a younger employee. At the time of his discharge, Johnson was sixty years old. (Def. Exh. 2 to Johnson Depo.). According to the company, following Johnson's abrupt departure, it replaced him with Finley. In his deposition, Johnson approximated Finley's age to be "late 40s or early 50s." (Johnson Depo. at 80). Therefore, the court concludes that Johnson has satisfied all the elements of his *prima facie* case.

However, by articulating a legitimate, nondiscriminatory reasons for Johnson's discharge, Consolidated has successfully rebutted the presumption of age discrimination created by his

8

*prima facie* case. The company contends that it replaced Johnson because his behavior led it to believe that he had resigned. Given the fact that Johnson was absent for two consecutive weeks without leave following a heated exchange with his supervisor, and the fact that throughout this period he never once indicated to the company that he planned to return to work, the court concludes that Consolidated has overwhelmingly met its burden. As discussed above, the burden now shifts to Johnson to show that Consolidated's reasons is merely a pretext for age discrimination.

To establish pretext, Johnson may "come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997). The court can find no evidence of pretext in the record, and, as noted earlier, Johnson failed to come forward with any such evidence. Thus, under the <u>Combs</u> standard, the court concludes that Johnson has not shown that Consolidated's articulated reason is unworthy of belief. The employer is, therefore, entitled to summary judgment on plaintiff's claim for discriminatory discharge.

## 2. *Constructive Discharge*

In addition to his claim for an actual discriminatory discharge, Johnson's complaint includes a claim for constructive discharge. This last claim is premised on the assumption that Johnson was not, in fact, discharged — an assumption this court has rejected. Ordinarily, such claims are mutually exclusive. For example, in order for Johnson to satisfy his *prima facie* case for discriminatory discharge, the court must find, as it has, that he *did not* resign his position as mail room foreman. On the other hand, for Johnson to succeed on his claim for constructive discharge, the court must find just the opposite — that he *did* resign due intolerable working conditions. Obviously, this court cannot be expected to make inconsistent findings from the same set of facts. Therefore, given the court's earlier findings, Johnson's claim for constructive discharge should be considered moot. However, in the interest of covering an alternative theory, the court will consider Johnson's claim for constructive discharge.

According to the Eleventh Circuit:

To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign. (Citations omitted). Before finding a constructive discharge, this court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of "intolerable."

Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991) (emphasis supplied); see also Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (describing constructive discharge standard). Although the record reveals that, in the months leading to Johnson's replacement, Consolidated was undergoing a comprehensive reorganization and modernization effort, and that Johnson disliked, and perhaps even actively resisted, that effort, there is no evidence to suggest that his working conditions remotely approached being "intolerable." Thus, even when assuming that Johnson was not fired, his constructive discharge claim is devoid of merit, and his employer would be due summary judgment on said claim.

## IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this 25th day of November, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE